And now here in the case Del Castillo v. Secretary from Mr. Sherman, attorney for the appellant Del Castillo. Thank you, Your Honor. May it please the Court. My name is Paul Sherman. I represent the appellant, Heather Del Castillo. Your Honor, the central question in this appeal is whether individualized advice about diet and nutrition is speech within the scope of the First Amendment's protection. The Court below, relying primarily on this Court's earlier decision in Locke v. Schor, held that it is not, characterizing such speech as merely professional conduct. That was error, and this Court should reverse. The reason Locke doesn't control this case is because the interpretation of Locke, adopted by the District Court and pressed by the government here, conflicts irreconcilably with the Supreme Court's recent decision in Nifla v. Becerra. That case rejected the so-called professional speech doctrine, under which speech by certain licensed professionals was subject to a lower level of First Amendment protection. Now the government has tried to draw a distinction here between the professional speech doctrine and the notion that the government can regulate professional conduct when it has only an incidental burden on speech. But in this case, that is just a distinction without a difference, because the only conduct at issue in this case is Ms. Del Castillo talking to people and giving them advice about diet. Counsel, to that point, doesn't the language of the statute focus on assessments and evaluations rather than advice, and because it does, does the statute not best focus on conduct? No, Your Honor, and I think Holder v. Humanitarian Law Project supplies the answer here. What we know from Holder is that the question is, what is the conduct that triggers the application of the law? Why is the government enforcing the law against someone? And the government in this case isn't enforcing the law against Ms. Del Castillo because she has come to some personal conclusion about what someone's dietary needs are. They're going after her because she has communicated that to somebody. Their only interest is that she is going to give advice that they don't think is good enough. That goes directly to the content of the speech. It's really not based on the content of the advice, whether it's good or not. Counsel, you don't fairly meet their case when you say that. Well, there's no requirement that some board of experts disagree with the advice given to the fact that she hasn't been licensed and hasn't met the criteria before she formulates a plan and conveys that speech. To be clear, Your Honor, I was speaking purely to what the government's alleged interest here, which is protecting people from bad advice. The law itself does not make determinations about whether advice is good or bad. But that's irrelevant to the level of First Amendment protection. We know from Reed v. Town of Gilbert that laws that draw distinctions based on the subject matter of speech are themselves content-based regulations of speech. And it's undisputed that in this case, if Ms. Del Castillo had been giving advice about just exercise, the law would not have applied to her. It only applies to her because she also gives people advice about how to eat, what to buy at the grocery store. So even if, in general, the law can be thought of as a regulation of conduct, when in a specific case the law is triggered by speech of a particular content, that is a content-based restriction on speech and it has to be analyzed as such. Your position requires that we hold that Locke's been overruled, does it not? Your Honor, I think that the First Amendment holding of Locke has been overruled. I think instructive here, and we submitted supplemental authority on this, is the Fifth Circuit's recent decision in the Vizalign case. In Vizalign, the Fifth Circuit recognized that that court's professional speech doctrine, which was adopted in a case called Hines, had been abrogated by Nifla v. Becerra. I think this is significant for a couple of reasons. Number one, the Fifth Circuit thought that this was simply obvious. It doesn't engage in extended discussion of this because it's so clear. And second, Hines, the Fifth Circuit case that adopted the professional speech doctrine, relied in part on this circuit's decision in Locke. So, if Hines is no longer good law, for the same reason Locke should no longer be good law. Now, if Locke is no longer good law, and I think under Nifla it is not, all this court needs to do is ask the kind of straightforward First Amendment questions it would ask in any other First Amendment case. So, is dietary advice speech? We know from Holder v. Humanitarian Law Project that individualized expert advice is speech. Does Florida's law burden that speech? Absolutely, it burdens that speech. My client would have to go back to college and do 900 hours of supervised practice and pay fees and pass tests before she can talk to people. That would take years of her time. That's an obvious burden. And what sort of evidence has the state produced to justify those burdens? It's produced virtually none. That's insufficient to satisfy any standard of First Amendment scrutiny, whether strict or intermediate. So, I'm happy to address any further questions that your honors have, but we think this case presents extremely straightforward First Amendment questions and the government has clearly failed to satisfy any level of First Amendment scrutiny. Let me ask this, counsel. What are your ramifications of your position for regulating and licensing other professions? Virtually every profession requires speech. I mean, that's part of it. So, aren't you arguing, in essence, that unless you meet some higher standard, you can't regulate a licensed profession? No, your honor. So first, I want to emphasize that although we argue that the speech incident to conduct exception is not applicable to this case, nothing that this court decides would undermine the speech incidental to conduct exception. So the paradigmatic example of that is from Planned Parenthood versus Casey, where the court held that if you want to engage in the noncommunicative conduct of performing abortions, you also have to provide certain speech to your patients. So, to the extent that the law is triggered by noncommunicative conduct to which speech genuinely is incidental, that's completely unaffected. Now, in other cases where the law is triggered solely by speech on a particular subject, that is going to raise First Amendment questions and the government will have to satisfy a First Amendment burden, but that is the import of the court's decision in NIFLA. Okay. Anything else, counsel? No, your honor. I'll reserve the balance of my time for rebuttal. Okay. Courtroom deputy, add any leftover time that he's got to his rebuttal time, and we'll hear now from Mr. Newhall for the appellee. Thank you, your honor. And may it please the court, Tim Newhall on behalf of the appellee. Florida's Dietetic and Nutrition Practice Act, which is set forth in Chapter 468, Florida Statute, provides that, quote, nothing in this act may be construed to prohibit or limit any person from the free dissemination of information related to nutrition. That would also include any unlicensed individual. What triggers application of the act is not necessarily the unlicensed practice of dietetics. It is the unlicensed practice of dietetics for remuneration, for pay. So it's the conduct of accepting... I'm sorry. He would say that what triggers the act is the unlicensed speech or pay. Well, your honor, he does say that, but he's incorrect because the act itself provides that it does not limit anyone's right to free expression concerning dietetics or nutrition. So I guess in that instance, free has dual meaning? Well, that's correct, your honor. I mean, you can't get paid for it. That's what actually triggers the unlicensed provision practice parts of the statute. It also means, though, that you cannot be limited in what you say. You're free to say whatever you would like about diet and nutrition, and you're free to say it to anyone you want. You just can't charge for it? You cannot get paid for it, your honor. That's correct. And that is what has triggered the application of this act to Ms. DelCastillo. Counsel, in the Supreme Court opinion back in Thomas v. Collins, though, the Supreme Court has indicated for a long time that compensation for speech is not going to remove that speech's First Amendment protection, correct? Well, that's correct, your honor. And we concede that the act of accepting remuneration for the speech does not lessen any First Amendment protection that it's entitled to. We would argue that it does not enhance any First Amendment rights either. Well, then what difference does it make that the act says you can do it for free or do it freely? Well, the difference is that the act is structured in such a way that it does not impact anyone's First Amendment rights to speak about diet and nutrition. However, it also then implements the decision made by the findings of the Florida legislature that these protections are necessary to protect the public health and safety, that you have to have some sort of licensing provision that protects the public from bad dietetic advice. Counsel, that gets into the First Amendment analysis as opposed to establishing that there is not First Amendment application. Well, your honor, Judge Rogers in the district court found that this act is subject to not enhanced scrutiny, but rational basis scrutiny. And we certainly do not object to that. However, the way this act is written, it allows Ms. Del Castillo and anyone similarly situated to discuss dietetics with anyone she would like at any time she would like, in almost any manner she would like, as long as she doesn't accept pay for it. Well, counsel, I have to say, this is Robert Luck. I can say that that doesn't seem like your best argument because you fall into the traps that Judge Carnes and Judge Branch told you. Isn't the better argument and the one that Judge Rogers relied on that the statute and the one that Judge Branch asked about in her first questionnaire, that the statute goes after conduct, goes after assessment, research, education, therapies, establishing recommendations. In other words, that this is a statute directed at conduct and any incidental effects that it has are authorized under Becerra and the cases relied on by your opposing counsel. That's absolutely correct, Your Honor. And you've just anticipated the next portion of my argument. That is exactly the point. Becerra does not say that any sort of statute that restricts the class of people who can practice a profession has to meet enhanced scrutiny. All it says is that any speech which limits the content of what may be said, any content-based restriction on speech is subject to enhanced scrutiny. And so for us, the determination is simply whether this is a conduct-based regulation or is instead a speech-based regulation, right? I mean, isn't that what... That's exactly correct, Your Honor. That's the case in a nutshell. And that's why Mr. Sherman, who I have great respect for, has argued so hard that this is a content-based restriction on speech, which I respectfully submit is clearly not. It merely regulates professional conduct and any implication on speech rights is merely incidental. And so in the Visaling case mentioned by your opposing counsel, the Fifth Circuit seemed to say they had a surveyor's regulation and surveyors brought a lawsuit similar to the lawsuit brought here. And what the Fifth Circuit said is, post Becerra, we need to ask three questions. And they actually remanded it to the district court to answer it in the first instance. A, is this licensing requirement a regulation of only speech? Second, is it a restriction on speech only incidentally to the regulation of non-expressive conduct? Right, those are the three options, right? That's correct, Your Honor. Right. And so we have to decide which of those three options applies. Is this a speech of only... Is this a regulation only of speech? One that only incidentally affects speech of... Affects the regulation of non-expressive conduct and is only non-expressive. Now, the trial court, after summary judgment, made a finding of one of those, unlike the case in the Fifth Circuit. Here, Judge Rogers specifically stated that it was only incidentally affected the regulation of non-expressive conduct, right? That's correct, Your Honor. Exactly right. How is that either right or wrong? And why is it right or wrong? Well, it's right because what is... As you pointed out, and as Judge Branch pointed out in her question, this act regulates conduct. It prevents the unlicensed practice through various means, including evaluation, assessment. And I would also submit respectfully that it regulates conduct by saying that you may not accept pay. You're welcome to talk to anyone you want, but you can't get paid for it. So Judge Rogers' finding that this act only affects speech rights incidentally to an otherwise valid regulation of professional conduct is exactly correct. Counsel, what about the fact that you have these exceptions to the statute where certain people are not covered by it? In a specific example, chiropractors and acupuncturists. Those individuals don't seem to have the training that perhaps some of the other individuals enjoying the exemption do on this subject. So how are those exemptions not a problem for you? Well, the exemptions are not a problem because they merely say that anyone who is licensed to perform another... is licensed to perform, I don't know, chiropractic medicine or osteopathic medicine or physical therapy or pharmacy, that those individuals can continue to practice the scope of their profession, even if it involves giving dietary advice.  Now, there's also an exception for people who provide or, I guess, advocate dietary supplements. But I would also point out that that exception just merely states that anybody who's in that position, just like anybody else who's not licensed, cannot practice or cannot accept pay for giving any advice they may give in touting their products. So these, I would respectfully submit these exceptions are well thought out and well crafted so that while the public is being protected from bad dietary advice by unlicensed or unqualified individuals, that people who have a license to practice another profession, to the extent that dietary advice may be included within that, are still free to practice their profession. To get back to the point that Judge Luck made about the Bevisalign case, I would also point out that the Fifth Circuit did not determine what the appropriate level of scrutiny might be, nor did they determine whether or not Mississippi even had a valid interest in regulating Bevisalign's practice. Those shortcomings don't exist here. Clearly, the state has a compelling interest in protecting the public health, safety, and welfare. Nor did the Fifth Circuit in Bevisalign, as Judge Luck pointed out, did not determine to what extent Bevisalign's practice constituted speech versus conduct. The appellate also filed a notice of supplemental authority yesterday afternoon concerning a decision by the Ninth Circuit, which just came out yesterday. So, I've read that opinion. That's the North Pacific Horseshoeing School versus Kirschmeier. I would point out that the Ninth Circuit, in that particular case, also determined that the law in question in that case was a condescension restriction on speech. It was something more than just an incidental burden on speech by an otherwise generally applicable licensing requirement. Counsel, if—I'm sorry. Are you still talking about the Ninth Circuit? No, ma'am. You can go ahead. I'm sorry. No, I just—for the sake of argument, if we were to determine that a heightened scrutiny applies—intermediate, for example—can the state satisfy the test? I would argue that, yes, it can. The record contains evidence from the state's expert witness that there is certainly an example of how prescribing a certain diet, like a Whole30 diet challenge, something that with certain health problems, mainly pregnant women or women who are of childbearing age and may become pregnant, that if you don't prescribe somebody like that additional folic acid while they are on this diet, that their unborn baby could be subject to a significantly enhanced chance of neural tube defects, which are, of course, devastating birth defects. But you're going to have a problem with the narrow tailoring prong. Well, I disagree with that, Judge Locke, because this act is—I don't see how it could be tailored any more narrowly than it is now. Well, I think Judge Branch asked you a little bit about that, with all of the exceptions. I mean, there's a lot of holes in this thing for what you can do. If this is so important and in such a heightened interest of the state, how is there so many people who can go about doing this with a lot less training in the various specialties that are required here? Well, as I've indicated, Your Honor, these exceptions only—they hold that someone who is licensed to practice medicine, for example, if giving some advice about a particular aspect of diet may be within the scope of their practice, they can continue to do that. This act did not suddenly restrict their ability to practice their profession. Well, I understand that. But isn't that kind of the problem? If you're an acupuncturist and have no degree in any of this and are authorized to give this very advice that can only be given by a specialist, and that, if not, is putting people in peril, that seems not to be narrowly tailored. I'm not meeting that interest. Again, I don't know—I can't comment on the scope of practice of acupuncturists, but to the extent that acupuncturists have any advice about diet and they can give that pursuant to their license, then they can continue to do that, and this act does not restrict their ability to practice their own license. My time is— Which raises— And Kelpo, I have a follow-up question on the narrowly tailored prong. I think everybody would probably conceive that the requirements to get this license are very costly and time-consuming. The narrowly tailored prong, are there other options that the statute could require of someone rather than to go through these burdensome requirements, such as, if you're going to give this advice, you have to put a disclaimer on your website. There are other protections that the statute could afford the general public, and I guess I'd like for you to address that issue as it relates to narrowly tailored. Well, again, Your Honor, I would simply go back to what I have argued earlier, and that is that Ms. DelCastillo or anyone else similarly situated can absolutely give all the advice they want as long as they don't get paid for it. They can put a—perhaps they could have a website and sell ads. I don't know, but as long as they are not giving individualized dietary advice and getting paid for it directly for that advice, then I don't think this act limits their ability to do that, and I would submit that it's very narrowly tailored, with all due respect. Thank you, counsel. Thank you, Your Honor. Yes, Mr. Sherman. Thank you, Your Honor. Just a few quick points. First, it is black-letter First Amendment law that the receipt of pay for speech has no effect on the level of constitutional protection that that speech has. That has been held by the Supreme Court time and again. It's no different than saying you can give away a book, but you can't sell a book. That is not a First Amendment distinction that matters. On this issue of whether there's the conduct of assessments and that her advice is merely incidental to assessments, here I think Holder v. Humanitarian Law Project again supplies the answer, because we have to look at what is the assessment that she's engaging in that triggers the law. And the only assessment that she's engaging in is asking people questions and getting information from them, which is First Amendment activity. Now, if she were doing blood tests or something like that, that would be different. That would be noncommunicative conduct. But here, the only thing she's doing is talking to people about their dietary goals and then providing them with her advice. All of that is speech. And no matter what part of that triggers the application of the law, it's a law that burdens First Amendment activity and has to satisfy heightened scrutiny. As to the level of scrutiny that applies, this court does not have to decide that because this law fails under any standard of First Amendment scrutiny. I would reemphasize that the government has provided no evidence on less restrictive alternatives. The evidence that it has provided simply can't satisfy the government's burden. Walsh-Schlager v. Governor of Florida rejected evidence that was even more weighty than this when it held that six anecdotes were insufficient to justify the law at issue in that case. Here, we don't even have that many anecdotes. We have the hypothetical conjecture of the expert. And then we have references to a 30-year-old episode of the Oprah Winfrey show. And finally, Your Honor, the government also ignores the least restrictive alternative here, which is the one that many states have, which is simply to not regulate this, to leave this up to the market. The government could have provided evidence that people in those states have been harmed by that, that that's a bad system. Not only did they not provide that evidence, their expert said that she was not aware of any evidence that supported that. So the final thing, and we'll be submitting a 28-J letter on this this morning, the Fourth Circuit issued its decision in Billups v. City of Charleston, a First Amendment case challenging that city's licensing law for tour guides. That case is relevant, as we'll explain in our letter, because it holds that this distinction between paid and unpaid is irrelevant. You could give unpaid tours but not paid tours. And it similarly rejects the speech incidental to conduct argument. If there are no further questions, I will simply ask the court to reverse the decision below and remand with instructions to enter judgment for the appellant. Thank you, counsel. We'll take that case under submission and we'll stand in recess until tomorrow morning.